**U.S. COURTS**

**JUN 27 2013**

Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

**REDACTED PURSUANT TO 18 U.S.C. § 3509(d)**

WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
JAMES M. PETERS, WASHINGTON STATE BAR NO. 7295
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>  vs.<br><br>MICHAEL BRIAN CLAIR,<br><br>       Defendant. | Case No. 1:13-cr-00169-EJL<br><br>**RULE 11 PLEA AGREEMENT** |

## I.   GUILTY PLEA

**A.   <u>Summary of Terms</u>.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the defendant, the attorney for the defendant, and the Government[1] agree that the defendant will waive his right to indictment and plead guilty to Count One of the Information, which charges the defendant with Sexual Exploitation of Children, in violation of 18 U.S.C.§ 2251(a), and a forfeiture allegation.

**<u>Forfeiture Allegation</u>:** In connection with the violation set out above, the defendant agrees to forfeiture of the property referred to below.

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this Plea Agreement.  Upon acceptance of the defendant's guilty pleas, and the defendant's full compliance with the other terms of this Agreement, the Government, under Federal Rule of Criminal Procedure 11(c)(1)(B), will recommend a sentence of 360 months incarceration.  The defendant is free to recommend any sentence that he believes is appropriate. In addition, the Government has secured agreements from the Jerome County, Idaho, Prosecuting Attorney, the U.S. Attorney in the District of Arizona, and the La Paz County, Arizona, District Attorney, that no charges will be brought against the defendant related to this criminal investigation involving Jane Doe # 1 and Jane Doe #2, as set forth in the factual basis below.  The defendant agrees that the Court may consider uncharged "relevant conduct," including uncharged conduct, in arriving at an appropriate sentence pursuant to USSG § 1B1.3.]

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

**Plea Agreement**                    -1-

**B.** <u>Oath</u>. The defendant will be placed under oath at the plea hearing. The Government may use any statement that the defendant makes under oath against the defendant in a prosecution for perjury or false statement.

**C.** **WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL**

The defendant understands that by pleading guilty, the Defendant waives the following rights: 1) the right to plead not guilty to the offense charged against the defendant and to persist in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden would be on the Government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the defendant. If the District Court accepts the defendant's guilty plea, there will be no trial.

**II.** **NATURE OF THE CHARGES**

**A.** <u>Elements of the Crime</u>. The elements of the crime of Sexual Exploitation of Children, as charged in Count One, are as follows:

1. That the victims were less than 18 years old;

2. That the defendant persuaded, induced, or enticed the minors to take part in sexually explicit conduct for the purpose of producing visual depictions of that conduct;

3. The defendant knew or had reason to know that such visual depictions would be transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce; or was produced using materials that have been mailed or shipped or transported in and affecting interstate or foreign commerce by

Plea Agreement                    -2-

any means, including by computer; or the visual depictions were actually transported using any means and facility of interstate and foreign commerce or in and affecting interstate and foreign commerce.

**B.**     **Factual Basis**.  If this matter were to proceed to trial, the Government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

On October 28, 2012, the Defendant, MICHAEL BRIAN CLAIR, using his Hotmail email account, responded to an undercover advertisement, titled, "Taboo Porn-m4mw- 34," posted on Craigslist by an undercover HSI Special Agent in New Orleans, LA.  While conversing via email with the undercover agent, CLAIR made several statements about having inappropriate sexual contact with a four-year-old female.  The email conversation also included discussion about trading sexually explicit images.

Online searches for the user's screen name lead HSI agents to, among other leads, Facebook pages for Mike CLAIR of Parker, Arizona.  HSI issued summonses directed to Microsoft and Suddenlink, which resulted in subscriber information that led investigators to 821 S. Ocotillo Avenue, Parker, Arizona, 85344.

The undercover Agent obtained a search warrant in the Eastern District of Louisiana directed at Microsoft for the contents of CLAIR'S Hotmail account, "mikeiam4@hotmail.com."  Results from Microsoft included an email with an image file attached, sent on October 30, 2012, from the user (CLAIR) to another email account for an individual.  [That individual is now the subject of an investigation by HSI.].  The image file was named "0729 044.jpg."  It depicts the finger of an adult digitally penetrating, or attempting to penetrate the anus of a prepubescent minor.  CLAIR sent this image as an attachment during a discussion with another individual about

Plea Agreement                              -3-

his desire to exploit children sexually.[2]   During the email dialogue, CLAIR mentions his phone is an iPhone.

Investigators used an "Opanda Exif Image View" to retrieve exif data from the image named "0729 044.jpg," which revealed the image was taken with an iPhone 4 on July 29, 2012. Opanda provided the Global Positioning System (GPS) coordinates where the image was taken. Agents used those coordinates to map the location where the image was taken, and found the image was taken at or within the same block as 821 Ocotillo Avenue, Parker, Arizona.   This address corresponds with the Microsoft response to the HSI Summons showing where the Defendant was residing at the time.

Sometime in late December 2012, the Defendant and his family moved from Parker, Arizona to Hazelton, Idaho.  On January 17, 2013, HSI Agents from Boise, with the assistance of deputies from the Jerome County Sheriff's Office, executed a federal search warrant at the Defendant's new address, 933 South 2900 East, Hazelton, Idaho.  The Defendant, his wife, several other adults, and two children, referred to here as Jane Doe # 1 (JD1) age four years, and Jane Doe #2 (JD2) age six years were residing at that home.

During that search, the investigators seized an Acer Aspire 5920 ZD1 laptop computer, serial number LXAKV0X3797461211E2500, containing Hitachi 160-gigabyte hard drive, serial number 071113BB0C00WGH5HEGC, bearing a manufactures trade label, "Made in Thailand." Agents seized an iPhone4 directly from CLAIR.  Both items belonged to the Defendant and CLAIR admitted that he was the primary user.  HSI Boise Computer Forensic Agent (CFA) Brad Thrall conducted an on-scene preview of the Acer laptop computer and found sexually explicit

---

[2]  In a subsequent examination of Clair's Acer laptop computer after it was seized in January 2013, Homeland Security Computer Forensic Agent (CFA) Brad Thrall found data that shows the image "0729 044.jpg" had been on the Acer Laptop computer at one time, but was no longer there.

**Plea Agreement**                                    -4-

images and videos depicting obviously prepubescent minors stored on the hard drive.

On January 23, 2013, a forensic interviewer at the Children at Risk Evaluation Services (CARES) in Twin Falls, Idaho interviewed Jane Doe # 1 (JD1) and Jane Doe #2 (JD2). Both children disclosed that the Defendant had engaged in sexual contact with them. In pertinent part, JD1, age four years, disclosed that she had touched the Defendant on what she referred to as "what you go pee out of." She said, "He just asked me if I wanted to touch it." "Just I touched it." She said she touched it more than one time and no one saw it happening, and clarified that she touched under the Defendant's clothes when she touched the spot where pee comes out. She said that this happened at their old house in Parker, Arizona.

The older child, JD2, age six years, when asked whether anyone takes pictures of just parts of you, disclosed to the forensic interviewer, "[Defendant] took a picture of me, but I can't tell anyone (she was giggling and covered her mouth with her hand). When asked to tell about that, JD2 said, "[Defendant] took a picture of my girl parts and my bum. I seen [Defendant's] boy parts and bum." She said that [Defendant] took pictures of her sister's "bum." JD2 said [Defendant] "said he was gonna delete it. Sometimes [Defendant] lets us see his bum." When asked if he ever wanted you to touch his bum, JD2 said "sometimes." Asked whether he ever wants you to touch other parts, JD2 said "no, no, just his boy parts in the shower sometimes." When asked if it is OK to touch his boy parts in the shower, JD2 said, "yes, cause sometimes I wash it sometimes."

Lab tests from the medical examination of JD1 showed she tested positive for trachomatis, a sexually transmitted disease. On January 30, 2013, the Defendant voluntarily provided a urine specimen for purposes of testing for sexually transmitted disease. The sample was submitted to the Idaho Bureau of Laboratories, which reported the Defendant tested positive for Chlamydia trachomatis.

Plea Agreement                          -5-

CFA Thrall completed a forensic examination of the Acer Laptop and the Hitachi hard drive on February 19, 2013. The computer was running the Windows Vista operating system, and had a registered owner recorded in the registry as "Mike." The only user-created account on the computer was named "Mike." The registry data indicated the operating system was installed on November 11, 2007, and that account was last logged into on January 17, 2013.

CFA Thrall located sexually explicit images of JD1 and JD2 on CLAIR'S computer hard drive. Among them are digital files with truncated file names that end in "804 006.jpg," and "image_67.jpg," both of which depict JD1, age four years in sexually explicit conduct. These images contain exif data showing they were taken at or near Yucca, Arizona, on August 4, 2012. The full file name for digital file "804 006.jpg" is {22D1490B-95A8-4B50-A84A-2A442A60BB7}-804 006.JPG. CFA Thrall recovered this image from CLAIR'S Acer Laptop, located at file path: "C:/Users/Mike/AppData/Local/Microsoft/Windows Photo Gallery/Original Images." This image shows the partial face of Michael CLAIR and partial face of JD1 sitting in CLAIR's lap with her genitals exposed to the camera. Both people are facing the camera. CLAIR is wearing a blue shirt and white plaid shorts. JD1 is wearing a dark shirt with writing and a light color skirt. Her legs are spread open and the skirt is above her legs exposing her bare genitals. CLAIR's left arm is holding JD1's left leg open. Digital file "image_67.jpg" depicts the same persons as in the previous photo. The Defendant is displaying his erect penis in front of the prepubescent minor female's bare genitals. HSI investigators showed the Defendant's wife a sanitized version of "image_67.jpg." From the image, she identified the Defendant and JD1. She She also recognized the shirt worn by JD1 as a "Perry the Platypus" shirt that she had in Parker, Arizona.

Also among the images investigators found in the unallocated space of the hard drive removed from the Defendant's Acer Laptop were a series of sexually explicit images, beginning

**Plea Agreement**                                    -6-

with sequential numbers 1072 through 1078 that depict JD2, that depict JD2, age six years, in sexually explicit conduct. These images depict JD2 nude, reclining on what appears to be a bed. In one image, her right hand is touching her bare genitals and pubic area. In the other images, she is depicted with her legs pulled towards her head exposing her bare genitals and pubic/anal areas. The Defendant agrees that he produced these images and that they depict a minor engaging in sexually explicit conduct.

In February 2012 the Queensland Police Department, Brisbane, Australia arrested an Australian citizen utilizing the screen name "iluvyunggurls" to distribute child pornography to hundreds of subjects worldwide. Investigators obtained access to the subject's email account and began investigating individuals who claimed to have access to children and were sending and receiving child pornography. That led to a search warrant executed in Australia on January 14, 2013, directed at a Yahoo! email account (redacted)32100@yahoo.com. Review of that account showed that the user had exchanged emails with the user of mikeiam4@hotmail.com, the account of the defendant, Michael CLAIR. A total of 137 emails were sent between these two users from September 8, 2012 through September 13, 2012, including fifty-six by the user of mikeiam4@hotmail.com (Michael CLAIR). Twelve of the 56 emails sent by CLAIR had attachments. During these email communications, the user of mikeiam4@hotmail.com, claimed to be actively abusing his two daughters, whom he said were five and six years old.

The FBI provided to Homeland Security Investigators in Boise copies of suspected child pornography files that had been sent by the user of mikeiam4@hotmail.com, to the subject in Australia. CFA Thrall and SA Denning reviewed the images and noted that one image, a close up of a nude prepubescent female floating on her back in a swimming pool (aided by a flotation device), with her nude genitals exposed, and the focus of the camera on her genital. This was the same image as the image named "003.jpg" that had been found on Michael Clair's computer hard

**Plea Agreement**                          -7-

drive. The FBI information indicated that this image was electronically distributed on September 10, 2012, from the email account mikeiam4@hotmail.com, to the subject in Australia. The face of the child depicted in this image is visible, and it is JD1. EXIF data extracted from the image shows coordinates that return to Ocotillo Avenue and West 9th Street in Parker, Arizona. These coordinates are near the former Clair residence (821 South Ocotillo Avenue, Parker, Arizona).

CFA Thrall also located an estimated 1,718 images that depict sexual acts involving minors, or fit most of all of the *Dost* criteria for lascivious exhibition of the genitals or pubic area of minor victims, or that he recognized as depicting "known" victims of child pornography from previous cases. Also among the matter found by CFA Thrall on the Defendant's computer/hard drive are sexually explicit images that depict other prepubescent minors (besides JD 1 and JD2), including some depicting minors being subjected to sadistic and masochistic abuse. These include images of adult males penetrating the genitals/anus's of prepubescent females with their penis; images of an adult male ejaculating into the face of a grimacing female minor who appears to be less than six years old; an image of a prepubescent female with a foreign object inserted in her vagina, and an adult ejaculating into the mouth of a small child who appears to be less than six years old, and multiple images of prepubescent minors performing oral sex on adult males.

## III.   SENTENCING FACTORS

   **A.   Penalties.** A violation of 18 U.S.C. § 2251(a), as charged in Count One, is punishable by a term of imprisonment of from 15 to 30 years, a term of supervised release of not more than five years, up to life, a maximum fine of $250,000, and a special assessment of $100.00.

   **B.   Supervised Release.** The Court must impose a period of supervised release. No agreement exists as to the length of supervised release.

   The law permits the combined prison time and term of supervised release to exceed the

**Plea Agreement**                                   -8-

maximum term of incarceration for the crime(s) to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

      **C.**    **Fines and Costs.** The Court may impose a fine. No agreement exists as to the amount of the fine. The Court may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

      **D.**    **Special Assessment.** The defendant will pay the special assessment before sentencing and will furnish a receipt at sentencing. Payment will be made to the United States District Court, Clerk's Office, Federal Building and United States Courthouse, 550 West Fort Street, Fourth Floor, Boise, Idaho 83724.

      **E.**    **Restitution.** In addition to any fine or costs imposed, the defendant agrees to pay restitution equal to the loss caused to any victim of the charged offense pursuant to any applicable statute.

      **F.**    **Forfeiture.**

      The defendant understands that the Court will, upon acceptance of the defendant's guilty plea, enter a forfeiture order as part of the defendant's sentence, and that the forfeiture order may include assets directly traceable to the offense, assets used in the commission of the offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense. The defendant agrees to immediately forfeit to the United States the property set out in the Forfeiture Allegation of the Information

      The defendant agrees that the forfeitures herein are separate from all other penalties, including monetary ones. The defendant agrees to consent to any abandonment proceeding as to forfeitable property herein, and to the entry of orders of forfeiture for such property, including civil administrative forfeiture, civil judicial forfeiture, or criminal forfeiture which may be

**Plea Agreement**                   -9-

brought against the property, and agrees to waive the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  If this Agreement is withdrawn for any reason, the defendant waives the right to contest all civil and administrative forfeitures which began before the withdrawal.

The defendant agrees to assist fully in the forfeiture of the foregoing assets. The defendant agrees to complete a personal financial statement and to disclose all of the defendant's assets and sources of income to the Government, including all assets over which the defendant exercises or exercised direct or indirect control, or in which the defendant has had any financial interest, and to cooperate in obtaining any records relating to ownership of such assets when sought by the Government, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The defendant further agrees that the defendant will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding or related civil forfeiture case, and that the defendant will testify truthfully in any such proceeding.

The defendant is the sole owner of the properties and property interests listed above, except as specifically set out herein.  If the defendant is not the sole owner of these properties and interests, representations are false or inaccurate, the Government may pursue any and all forfeiture remedies available at law or equity based on the violations covered by this Agreement.

The defendant agrees to waive all constitutional, legal and equitable challenges (including

**Plea Agreement**                                    -10-

direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

The defendant agrees that the forfeiture provisions of this Plea Agreement will survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this Agreement. The forfeitability of any particular property pursuant to this Agreement shall be determined as if defendant had survived, and that determination shall be binding upon the defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full. If the crime(s) involved victims, then the defendant acknowledges and agrees that this Agreement to disgorge the defendant's wrongfully obtained criminal proceeds for the benefit of the defendant's victims is remedial in nature, and therefore that the defendant intends for the disgorgement to be completed regardless of any possible future abatement of defendant's criminal conviction. The United States District Court for the District of Idaho shall retain jurisdiction to settle any disputes arising from application of the foregoing forfeiture provisions.

IV.    UNITED STATES SENTENCING GUIDELINES

A.    **Application of Sentencing Guidelines**. The Court must consider the United States Sentencing Guidelines (USSG) in determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the Court may consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

The Court is not a party to the Plea Agreement. The Plea Agreement does not bind the

**Plea Agreement**                                        -11-

Court's determination of Sentencing Guidelines range. The Court will identify the factors that will determine the sentencing range under the Sentencing Guidelines. While the Court may take the defendant's cooperation, if any, and the recommendations of the parties into account, the Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that the Court is not bound by this Agreement, the parties agree to the recommendations and requests set forth below.

**B.**   **Sentencing Guidelines Recommendations and Requests.**

1.   **Acceptance of Responsibility.** If the defendant clearly accepts responsibility for the offense, the defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under USSG § 3E1.1(a). The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. If, before sentence is imposed, the defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or not make such a recommendation.

2.   **Stipulation Regarding Sentencing Guidelines.** The defendant understands that the United States Sentencing Guidelines apply in an advisory manner and are not binding on the Court.

3.   **Joint Recommendations.** The parties jointly make the following recommendations, and agree that the following shall be included as terms of the defendant's sentence, expressly bargained for as a part of this plea agreement:

**Plea Agreement**                                -12-

a)  **Psycho-Sexual Assessment** --The defendant will submit to a sex offender evaluation pursuant to Title 18, United States Code, Section 3552(b) prior to sentencing in this case. It is the defendant's obligation to secure this evaluation from a mental health professional certified by the Idaho Sex Offender Classification Board (see, http://www2.state.id.us/socb/). The evaluation shall follow the format for psycho-sexual evaluations set forth by the Idaho Sex Offender Classification Board and the Practice Standards and Guidelines for Members of the Association for the Treatment of Sexual Abusers (ATSA). The defendant agrees to submit to all evaluation procedures at the direction of the treatment provider, including phallometry and polygraph testing if the treatment provider deems them necessary.

b)  **Waiver of Confidentiality** -- The defendant agrees to waive any right to confidentiality and allow the provider conducting the psycho-sexual evaluation (and any subsequent treatment) to supply a written report(s) to the United States Probation Department, the Court and the United States Attorney.

c)  **Contact with Minors** -- The Defendant may not knowingly have direct or indirect contact with the victims named in the Plea Agreement, or any children under the age of eighteen, unless approved in advance, in writing, by his probation officer.

d)  **Access to Minors** -- The Defendant will not knowingly reside or loiter within 300 feet of schoolyards, playgrounds, arcades or other places, establishments and areas primarily frequented by children under the age of eighteen.

e)  **Occupational Restriction** – The defendant may not engage in any paid occupation or volunteer service that exposes him either directly or indirectly to minors, unless approved in advance, in writing, by his probation officer.

f)  **Restriction on Computer/Internet Use** -- The Defendant may not possess or use a computer or other electronic device connected to the Internet without the prior

**Plea Agreement**                                    -13-

permission, in writing, from his probation officer.

        g)      **Possession of Sexually Explicit Matter Involving Minors** -- The Defendant will not possess any child pornography or obscenity, or sexually explicit visual or text (written) material involving minors.

        h)      **Polygraph Testing** -- The Defendant agrees to participate in polygraph testing to monitor his compliance with supervised release and treatment conditions, at the direction of his probation officer and/or treatment staff.

        i)      **Post-Incarceration Treatment** - The Defendant will successfully complete any course of treatment related to his offense, as directed by his probation officer, including but not limited to cognitive/behavioral treatment for sexual deviancy under the direction of a qualified mental health professional who is experienced in treating and managing sexual offenders, such as a member of the Association for the Treatment of Sexual Abusers (ATSA). The defendant will follow the rules of the treatment program as if they are the orders of the Court.

        j)      **Search Provision** - The Defendant will be subject to a search of his person, home or vehicle, and any objects or materials (including computers and other types of electronic storage media) found therein, at the discretion of his probation officer.

        k)      **Sex Offender Registration/Megan's Law/Adam Walsh Act Provision** - The defendant has been advised, understands and agrees that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant understands that federal law requires that he must update

**Plea Agreement**                    -14-

his registrations not later than <u>three</u> business days after any change of name, residence, employment, or student status. *See* 42 U.S.C. § 16913(c). State laws may be more restrictive.

The defendant has been advised and understands that Idaho law requires that such registration be updated with the sheriff of the county within <u>two</u> working days of coming into any county to establish permanent or temporary residence, commencement of employment or enrollment as a student in an educational institution, and provides that nonresidents employed in counseling, coaching, teaching, supervising or working with minors in any way, regardless of the period of employment, must register prior to the commencement of such employment with the sheriff of the county. *See* I.C. 18-8307 (4)(a)(b). The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both, and may also subject the defendant to prosecution under state failure to register laws.

l)      **Conditional Use/Derivative Use Immunity** - As a condition of court-mandated evaluation and treatment, the defendant will be required truthfully to reveal his entire sexual history, including the possibility of other sexual crimes. In recognition of the fact that full disclosure of that history is a necessary component of effective treatment, the government agrees that the defendant's admissions during psycho-sexual evaluation and sex offender treatment, to sexual crimes (excluding homicide) previously undisclosed to any law enforcement entity, will not be used against the defendant in a new criminal prosecution. See *United States v. Antelope*, 395 F.3d 1128 (9th Cir. 2005), and *Kastigar v. United States*, 406 U.S. 441 (1972). However, the parties agree that this use immunity and derivative use immunity, is expressly conditioned, upon: 1) the defendant successfully completing sexual deviancy treatment, and 2) the defendant not materially violating the rules of supervised release, and/or committing a sexual crime or a crime involving the sexual exploitation of children after the date of this agreement. If the defendant

**Plea Agreement**                              -15-

fails to complete all aspects of treatment, or fails to comply with all material supervised release requirements, or reoffends as described above, then this immunity agreement is rescinded and the government may use defendant's statements against him.

## V.    COOPERATION

A.    <u>**Truthful Information and Assistance**</u>.  The defendant promises to provide truthful and complete information to the Government and its investigative agencies, including testimony in legal and administrative proceedings, concerning the defendant's role and the roles of all others involved in offense-related behavior and other criminal activity.  The defendant shall not attempt to protect anyone through false information or omission.  The defendant will not falsely implicate anyone.  Any intentional deviation from the truth in any of the defendant's testimony may result in prosecution for perjury and obstruction of justice .  The defendant's duty under the terms of this Agreement is to tell the truth whether or not it bolsters the Government's case against any particular individual.  The defendant specifically understands that this Agreement is <u>not</u> contingent upon the conviction of any person or the forfeiture of any property.

The defendant agrees to cooperate in good faith.  This means the defendant will not only respond truthfully and completely to all questions asked, but will also volunteer all information that is reasonably related to subjects discussed.  In other words, the defendant may not omit facts about crimes, participants, or defendant's involvement, and then claim not to have breached the Agreement because the defendant was not specifically asked.  This Agreement is breached by any action or statement inconsistent with continued cooperation.  Determination of a breach is solely within the discretion and determination of the attorney for the Government.  The defendant acknowledges that any breach of this cooperation agreement will absolve the government of any obligation for consideration based upon cooperation, and will constitute grounds for the government to withdraw from this Agreement.  The defendant further acknowledges that the

**Plea Agreement**                                          -16-

Government's decision not to grant consideration for cooperation based on a determined breach will not constitute grounds for the defendant to withdraw from this Agreement.

The defendant agrees to be available for interviews to prepare for testimony. If necessary, the defendant will submit, upon request, to government-administered polygraph examinations (and provide a personal financial statement, if requested).

The defendant agrees to identify all property related to the defendant's crimes to which the defendant has pleaded guilty, and any relevant conduct. The defendant will identify the extent of any person's or entity's (including defendant's) interest in any such property. The defendant agrees to assist in the recovery and forfeiture of such property to the United States.

**B.** **Use of Information Against Defendant.** In exchange for the defendant's agreement, the Government will not use new information the defendant provides (pursuant to this Agreement) about the defendant's own criminal conduct. The Government may reveal such information to the Court. There shall be no restrictions, however, on the use of information: 1) previously known to law enforcement agencies; 2) revealed to law enforcement agencies by, or discoverable through, an independent source; or 3) in the event there is a breach of this Agreement.

**C.** **Substantial Assistance Determination.** If the Government determines, in good faith, that the defendant's cooperation amounts to "substantial assistance" in the investigation of others, the Government will request that the Court depart downward from the applicable sentencing range, pursuant to USSG § 5K1.1 and/or any mandatory minimum sentence, pursuant to 18 U.S.C. § 3553(e). Pursuant to *United States v. Auld*, 321 F.3d 861 (9th Cir. 2002) and *United States v. Jackson*, 577 F.3d 1032 (9th Cir. 2009), the defendant understands that any motion for downward departure must be made as a reduction from the applicable guideline range or the statutory minimum sentence, whichever is greater, consistent with USSG § 5G1.1(b). This

**Plea Agreement**                    -17-

will be the base offense level regardless of whether the Government also makes a motion for a sentence below the statutory minimum sentence pursuant to 18 U.S.C. § 3553(e).  The defendant further understands that if the base offense level is based on a statutory minimum sentence, no other reductions in the offense level will be allowed, including acceptance of responsibility, other than the reduction for substantial assistance.  If the Government determines the defendant has not provided substantial assistance, the Government will not move for a downward departure.

The Government's final decision whether to file motions pursuant to § 5K1.1 and/or 18 U.S.C. § 3553(e) will be made after evaluating the defendant's cooperation with regards to: 1) the significance and usefulness of the defendant's cooperation, 2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant, 3) the nature and extent of the defendant's assistance, 4) any injury suffered, or any danger or risk of injury to the defendant or defendant's family resulting from the defendant's cooperation, and 5) the timeliness of the defendant's cooperation.  The Government's specific recommendation will turn on the facts of the case, the sentence that likely would have been imposed absent an agreement, and the extent and value of the cooperation provided.  The Government's decision not to file such a motion will not constitute grounds for the defendant to withdraw from this Agreement.

D.  **Defendant's Assumption of Risk**.  The defendant agrees freely and voluntarily to cooperate with the Government, knowing the possible consequences of cooperation.  The defendant's attorney knows of the defendant's cooperation and agrees that the defendant shall enter into this Agreement.  The defendant hereby absolves the Government, including its employees, from any liability associated with this cooperation.

## VI.   WAIVER OF APPEAL AND 28 U.S.C. § 2255 RIGHTS

A.  In exchange for this Agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or to collaterally attack the entry of plea, the conviction,

**Plea Agreement**                                         -18-

entry of judgment, and sentence.

The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging the plea, conviction or sentence in this case. Further, if the defendant violates this waiver it will be a breach of this Agreement and the Government may withdraw from this Plea Agreement and take other remedial action.

If the defendant believes the Government has not fulfilled its obligations under this Agreement, the defendant will object at the time of sentencing; further objections are waived.

**B.** Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal only if one of the following unusual circumstances occur; the defendant understands that these circumstances occur rarely and that in most cases this Agreement constitutes a complete waiver of all appellate rights:

1. the sentence imposed by the District Court exceeds the statutory maximum;

2. the District Court arrived at an advisory Sentencing Guidelines range by applying an upward departure under Chapter 5K of the Guidelines; or

3. the District Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory Sentencing Guidelines range as determined by the District Court.

Notwithstanding subparagraph A, the defendant may file one habeas petition (motion under 28 U.S.C. § 2255) for ineffective assistance of counsel only if: (1) the motion is based solely on information not known to the defendant at the time the District Court imposed sentence; and (2) in the exercise of reasonable diligence, the information could not have been known by the defendant at that time.

## VII.   PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide material financial and other information requested by a

**Plea Agreement**                                -19-

representative of the United States Probation Office for use in preparing a presentence report. Failure to execute releases and provide information for the presentence report violates this Agreement and relieves the Government of its obligations in this Agreement. Such failure and response by the Government will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests. Providing materially false information will subject the defendant to additional penalties, including an enhancement under USSG §3C1.1.

## VIII.   NO RIGHT TO WITHDRAW PLEA

The defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing. The defendant cannot withdraw from this Plea Agreement or the guilty plea, regardless of the Court's actions.

## IX.   CONSEQUENCES OF VIOLATING AGREEMENT

A.   **Government's Options.** If the defendant fails to keep any promise in this Agreement or commits a new crime, the Government is relieved of any obligation to do the following: 1) make a sentencing recommendation consistent with the terms promised in this Agreement; and 2) not to prosecute the defendant on other charges, including charges not pursued due to this Plea Agreement. Such charges may be brought without prior notice. In addition, if the Government determines after sentence is imposed that the defendant's breach of the Agreement warrants further prosecution, the Government may choose between letting the conviction(s) under this Agreement stand or vacating such conviction(s) so that such charge(s) may be re-prosecuted. If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from the Plea Agreement in its entirety.

The Government's election to pursue any of the above options cannot be a basis for the defendant to withdraw the guilty plea(s) made pursuant to this Agreement.

B.   **Defendant's Waiver of Rights.** If the defendant fails to keep any promise made

Plea Agreement                              -20-

in this Agreement, the defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the defendant entered a plea of guilty or which were dismissed under this Agreement.  In addition, for any charge that is brought as a result of the defendant's failure to keep this Agreement, the defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations expired after the defendant entered into this Agreement.

Furthermore, if the defendant does not enter an acceptable plea, the Government will move to continue the trial now set to allow the Government adequate time to prepare.  The defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h).

## X.    MISCELLANEOUS

A.    **No Other Terms**.  This Agreement is the complete understanding between the parties, and no other promises have been made by the Government to the defendant or to the attorney for the defendant.  This Agreement does not prevent any governmental agency from pursuing civil or administrative actions against the defendant or any property.  Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this Agreement does not bind or obligate governmental entities other than the United States Attorney's Office for the District of Idaho.   The Government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities at the defendant's or defendant's counsel's request.

B.    **Plea Agreement Acceptance Deadline**.  This plea offer is explicitly conditioned on the defendant's notification of acceptance of this Plea Agreement no later than 5:00 p.m. on July 1, 2013.

**Plea Agreement**                                -21-

## XI.   UNITED STATES' APPROVAL

I have reviewed this matter and the Plea Agreement.  This Agreement constitutes a formal plea offer from the Government.  Any oral discussions with the defendant and defense counsel about a plea do not constitute a plea offer.  Any written offer or Agreement made prior to this Agreement is no longer a valid offer by the Government and is rescinded.  I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

WENDY J. OLSON
UNITED STATES ATTORNEY
By:

_____         _____6-27-13_____
JAMES M. PETERS                                             Date
Assistant United States Attorney


## XII.   ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this Plea Agreement with my attorney.  I understand the Agreement and its effect upon my potential sentence.  Furthermore, I have discussed all of my rights with my attorney and I understand those rights.  No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning the plea to be entered in this case.  I understand that this Agreement constitutes a formal plea offer from the Government.  Any oral discussions by me or my counsel with the Government about a plea do not constitute a plea offer.  Any written offer or Agreement made prior to this Agreement is no longer a valid offer by the Government and is rescinded.  In addition, no one has threatened or coerced me to do, or to

**Plea Agreement**                                   -22-

refrain from doing, anything in connection with this case, including to enter a guilty plea. I am satisfied with my attorney's advice and representation in this case.


_____          6/27/13
MICHAEL BRIAN CLAIR                        Date
Defendant


I have read this Plea Agreement and have discussed the contents of the Agreement with my client. The Plea Agreement accurately sets forth the entirety of the Agreement. I have conveyed all written offers from the Government to the defendant pursuant to Missouri v. Frye, 2012 WL 932020 (U.S. March 21, 2012). I understand that this Agreement constitutes a formal plea offer from the Government. Any oral discussions by me or my client with the Government about a plea do not constitute a plea offer. Any written offer or Agreement made prior to this Agreement is no longer a valid offer by the Government and is rescinded. I concur in my client's decision to plead guilty as set forth above.


_____          6/27/13
JEFFREY MCKINNIE                          Date
Attorney for the Defendant


**Plea Agreement**                   -23-